Good morning, Your Honors. Mr. Price is a person with psychosis who is marginally functional outside prison, much more so than when he's in prison when he's not very functional either. The Social Security's own expert, Dr. Boyd, described him as a person who's very marginally adjusted to adult life and society. The issue in this case is Mr. Boyd's ability to perform competitive work. Competitive work is not done inside prison. That appears to be the ALJ's means of weighing Mr. Price's ability to perform competitive employment. Completely artificial and makes no sense. It would be comparable to if you had somebody who had COPD and said, well they're doing really well in the hospital, when you've got them on three liters of oxygen at a constant rate, they're fine. They don't see any breathing problems at all. The issue again... Does the record show what the nature of the, what the grounds for his original, the original grant of disability benefits to him? The record doesn't. For some period of years, 14 years or something. The record doesn't. I can tell what the implication is, but it was never developed at the hearing stage at all, but it's mental. Does the Social Security Administration keep records? From my perspective, not very well. Not just limited in this case, but it's frustrating. And I understand there is case law that we do go back and look at what's gone on in the past and use that as, okay, what's happened in the past and why was he eligible for what has changed that characterized the situation? And it certainly would be appropriate for, if the case were remanded, for the Social Security Administration to engage in that analysis. The concern also about the ALJ buttressing his argument in terms of the GAF of 68 is that there's a string of GAF scores that are completely ignored and they cover a period of 22 months, some of which are the last of those that I'm referring to in June of 12, is after he's been in prison for because prison is his stressor. So if he's not functioning so well and everything is... He's happy in prison. I'm sorry? He's happy in prison. He indicates it's a stressor and as soon as he comes out, his GAF plummets. He ends up in this relationship with this woman who knocks on his door. She's got mental impairment. People with mental impairments make bad decisions. They get married. They fight. It's a stressor. He's unable to participate in his mandatory sex counseling. His counselor says putting him back in prison is a good thing for his own well-being and his parole officer says he's not being put back because of violation of his parole. He's being put back in prison for his own well-being. Was he working while he was incarcerated? No. My understanding is from the record, frankly from the record, is that he is in his cell and it's noted when the GAF score of 68 is noted is that he has difficulty sleeping and he's crying. So he doesn't have a prison job? Not to my knowledge, no. And that's certainly, I don't think that's an unusual situation. I don't think that's unusual. If again, I think it would have been noted in the record if he did in fact have a prison job. I think that would have been part of the assessment of how well he's functioning. And his prison records show no significant mental health history, right? I mean he doesn't, he's not a psychiatric patient while in prison. No, his diagnosis when he's in prison is that he is a schizoaffective disorder with psychosis. But you keep using the term psychosis and I don't think that's his diagnosis. His diagnosis is depression with some schizoaffective features as I understand it. His diagnosis... He's not a recent case law indicates that whether someone needs institutional care is not the level by which we measure someone being disabled and whether they can perform SGA. He's not constantly, consistently, actively psychotic, break with reality. I mean when you use the term psychosis it sounds like he has no grasp of reality. My use of the term is supported by the record. The prison psychiatrist, Dr. Pan, diagnosed him with schizoaffective disorder. I mean that's the, that's the, and you look up the diagnostic code and that psychosis is part of that. It just is. It's not my terminology. It's based on the record and that's based on his apex of functioning per the ALJ. But the ALJ used the term depression with psychotic features? Yes. And I think that's a fair alternative description. Controlled with medication? Poorly. Controlled with medication? Well being controlled and stable again by per case law is not a determinative factor whether someone can in fact hold a job and perform SGA. I mean and if you can maintain somebody so that they can be in the community... Right, but there's lots of evidence from the department's experts that say that he can maintain a job adequately and the treating psychiatrist's notes show that he's effectively or fairly effectively controlled with medication. Going back to the state agency doctors, Dr. Boyd gets a GAF of 50. This court has recognized that although that's a snapshot that that is something that's not consistent with holding employment, additionally the court has, Dr. Boyd notes that he again, I suppose it would look good on a resume, but the state agency doctor says I'm marginally, very marginally adjusted to adult life and society. Will you hire me? I don't think that would look, you know, he recommends that he has someone manage his money for him. He indicates that he's having a very difficult time staying on task. The state agency doctors blow right by that and indicate, oh he's not gonna have any significant limitations in showing up for work. But their assessment is not consistent with the very assessment of Dr. Boyd, which is shortly after he gets out of prison and as he enters into this marriage with this mentally deficient and impaired individual who's all on disability, he goes downward. And so you can't go, we've taken a very extreme when state agency doctors look at him at his best and we'll take him at the other extreme when he's in prison and he's away from the stressors and then magically we'll just ignore everything in between. That's not appropriate and that's what happened in this case. I think the rest of it, again, many of the other findings by the judge are border on silly. He mows the lawn if he's encouraged to do that. He burns food in the microwave that shows he can do simple work. I mean it doesn't make sense. He is, and his psychiatrist knows. I'm sorry, he did what with the microwave? He says that the ALJ found that he could prepare his own food. The source of that says that he's learned how to use the microwave in his late 30s and he burns food at it. That was the source of the ALJ's finding, that he could do simple activity. But important in that regard too, oh shoot I lost my train of thought. Judge Sutterfield, could I just ask you one question on the credibility issue? Maybe you can just straight, I'm confused. Apparently the ALJ confused two different events, one from 2005, one from 2010. Could you spell that out for me? I think he did. I think he's leapfrogged to, there was, again, not in the record, but there was an event back in 2005 where Dr. Lauer mentioned what he'd come in under these circumstances and I found him to be manipulative then and as I read the ALJ's decision and I think as conceded in the arguments by the Commissioner, the ALJ confused those. And I think what's important about that again is that it was still an admission against his will. He was brought by the most recent one. In 2005 he was admitted. It's again a very cryptic note. Okay, I'm still confused. Okay, but again, yeah, but in short answer question, I think the ALJ has the two events confused. Okay, thank you, Mr. Sutterfield. Ms. Schwartz? Good morning, Your Honor. May it please the Court? I'm Allison Schwartz on behalf of the Commissioner of Social Security. So what was the nature of his disability that gave rise to his earlier period of disability benefits? That is not clear from the record before us. What I can tell you is that Mr. Price's disability was subject to regulation because he was incarcerated. Yes, I understand, but what was the nature of the disability? It's not as if he was cured. When he was previously receiving benefits? He was cured. He was sent to prison. So the question is what was it? He had 14 years of these benefits, I think. So what were they for? I don't know, Your Honor, but I do know that they were for mental impairments, just as if he's on disability for 14 years, presumably for, of course, not to know that, I think is shocking. I mean, you'd think the administrative law judge would want to know, well, okay, what was the matter with this guy that he had 14 years of disability benefits? Well, to be... Maybe he was nuts. Then he goes to prison and, you know, he's happy in prison and his particular mental condition. Then he comes out and applies for disability benefits. Well, suppose the disability for which he got 14 years of benefits was the same disability that he's seeking benefits for now. That could be, and often... Well, that would be very important, right? Often claimants have continuing... Well, so why don't we have the information about the nature of that earlier disability? Because the ALJ determines disability under the period under consideration. That's not the point. The point is to find out what was his record in those 14 years. He must have been examined by countless psychiatrists and so on. What did they say? Now, then the question is, the next question would be, well, somehow, maybe because of the prison term or ordinary aging or what have you, his current condition is different. But what if his current condition is actually identical to what got him 14 years of benefits? Wouldn't that be germane? Your Honor, I hear what you're saying, but that's not the inquiry that the social security regulations have administrative law judges take when someone files a new application for defendants. I can't tell you there's evidence in the record. Do you mean that if he had those records, that the current administrative law judge would not look at them, would not think they were germane, would not think that a person's history is relevant to his current situation? Absolutely, they would be germane. In this case... So where are they? Well, you might want to ask Mr. Sutterfield that question, because plaintiff filed for disability... Social Security Administration? Don't you know anything about record keeping in the Social Security Administration? It's the plaintiff's burden to gather the record sufficient to gather the medical records for his application. Does the ALJ, does he have to ask the commissioner for his own records in the ALJ's custody? The commissioner viewed the medical records that were in the record under the period under consideration. I will add that there is one consultative examination that took place during the previous period, and that was with Dr. Boyd, the consultative examiner who examined Mr. Price in 2005, prior to his incarceration, and then again in 2010. Both of those examinations are in the record. And I would like to point out... Who put them in the record? Perhaps plaintiff put them in the record. What do you mean perhaps? Who put them in the record? You don't know. If you don't know, say it on the... I don't know exactly who put them in the record. So one little piece from the earlier time comes into the record, and all the rest is blank. And that you think is an intelligent way to decide these cases? I'm dealing with the record that's before me, and the record before me reflects a reasonable disposition by the ALJ that plaintiff's mental impairments are very severe. This is a close case. All of our cases in front of you are close cases. No, they're not. Some of them are very clear in favor of the Social Security Administration, and some are very clear in favor of the applicant. Well, usually to get to this point, the case would have to be fairly close, and I admit that this case is close. But the relevant inquiry is whether substantial evidence supports the ALJ's decision. The ALJ articulated several reasons in his decision for finding that plaintiff was not credible. And in fact, he articulated four. And all of those, all of his reasons, are drawn from the record that's under the period at issue in this case. What do we make of the use of these GAF scores? The ALJ considered the GAF scores in his decision, and looked at them as a whole, and found that the GAF scores at the end, during the time the plaintiff was admittedly in prison, but was consistently taking his medication because he was monitored, showed that he had mild symptoms. So because he might have been off his meds, we should simply disregard all the scores of 50 and lower? No, I'm not saying that, Your Honor. I'm saying that the ALJ's point with regard to the GAF scores was that the ALJ notes that they varied widely during the period under consideration at issue. They were very low at several points. However, when Mr. Price was undergoing routine mental health treatment and medication, his GAF scores were in a mild range. Do you acknowledge the fact that he was comfortable in prison? Sure. I don't acknowledge that that necessarily renders him disabled. Isn't working in a, I mean, you have this wonderful, I mean, not you, the vocational expert has this wonderful collection of job opportunities for him, such as, well the one that's a real joke is machine operator, right? No one's going to trust this guy to run a machine. But how about a bagger? So a bagger, you know, you're in a grocery store, you're in a supermarket, and there are loads of people moving around, and you're busy at one end and people coming through. Isn't that the very opposite kind of experience from being in your own cell in a prison? Absolutely, Your Honor. You're not comfortable with other people. So why does the vocational expert say, well the machine operator seems to me like a joke. You don't entrust a person with mental problems to a machine. And I don't even know what a clothes sorter is. I've never heard of that. But a bagger seems like just the kind of thing, you know, with loads of people milling around, that's the kind of thing that makes this person really uncomfortable. Your Honor, if I may answer that question. That's not a job he can do. That's not a job he can do. I agree with you. When you look up the DOT number that the vocational expert gave for bagger, it's not the bagger that you and I are thinking about when we hear the term bagger. A bagger under this definition is actually a person that works at a dry cleaners and puts the bag on the dry cleaning as it goes through. So yes, I absolutely agree with you that this person could not be a bagger in a grocery store. It would be immensely outside the bounds of his RFC. So what about a machine operator? This is somebody who works on a machine in the fishing industry. In the fishing industry? Yes. I mean, he's cleaning the fish? Yes. So he does assembly line work? Yes, and I will inform you that it's not necessarily assembly line work, Your Honor. It doesn't say that in the DOT description. But, you know, all I could say about that is that the plaintiff did not cross-examine. What's a cloth sorter? A cloth sorter is somebody who works with different types of clothes that are all apparently sort of in a pile and sorts them pursuant to instructions. Again, a dry cleaning? It seems similar to the dry cleaning, but the descriptions are a bit different. Okay. Well, thank you. Thank you very much, Ms. Schwartz. Mr. Sutter? Thank you, Your Honor. Just very briefly. Again, I think one of the major holes in the Commissioner's arguments with regard to the GAF is the fact that in prison from April of 12 to June of 12, under the ideal circumstances, with the acknowledged stressor removed, Dr. Pan assessed his GAF of 50. And for the ALJ to ignore that in the context of what was going on when the record clearly documents the stressors that Mr. Price was facing outside of prison is wrong. He has to reconcile that. He can't just say, I'm going to take the best and ignore the fact that when I took the best, he's suffering from crime episodes and problems with sleeping. Do you know why he was getting disability before his incarceration? No. As I indicated before, it's for mental. My strong belief is for mental. Part of that is that we have... When you say mental, is it a learning disability or is it a psychiatric issue? I think it would be consistent for the reasons found in Dr. Boyd's 2005 examination after which he was also granted disability benefits. Meaning what? A learning disability or a psychiatric? Depressive disorder with the personality disorder, the inability to function around people with a GAF of 50. Because his original application for benefits, the most recent application that's before us now, has had to do with an alleged learning disability and not the psychiatric issues which arose later. Right, but the court is aware a learning disability went off the boards a long, long time ago. There's nothing about a learning disability that keeps somebody from pushing a broom or taking out the trash. That's my point, though. He initially applied based on a learning disability, not these other problems, and he seemed singularly focused on getting his disability check back after he was released from prison. There's evidence in the record of that. That suggests to me maybe he was getting disability benefits previously for a learning disability and not psychiatric problems. I wouldn't think so based on Dr. Boyd's 2005 examination, number one. Number two is put in the context of somebody that Dr. Boyd labeled as a marginal communicator in his examination in 2010 and the fact that his mother had to assist him with basic information regarding his disability application. So those are factors. If I could just ask quickly whether... I'm trying to think if I've seen other cases in which the finding was the person is not disabled despite a finding that he cannot responsibly handle his own money. I'm not aware of some, but I think I could see that being a possibility, that someone has the ability to be around people, the ability to do a very simple one-step job... Show up. ...and show up, they have that ability, but they just can't manage their funds. I think that's certainly within the realm of possibility, sure. But I did the one thing and I couldn't find a site. To give an idea as to how poor his function is, Dr. Lee found it noteworthy to put in his notes that him going outside of his dog was something noteworthy to put in his notes, that he had advanced that far. So I think that's important to know. Does he have an IQ... I think you recall somewhere he has an IQ of 69? No, the IQ score is not... I did not see an IQ score in those. There are no IQ scores? No, they say he's rated as... the assessment is that he is, well, functioning, but in terms of a specific IQ score, I'm not aware of one, Your Honor. Okay, well, thank you very much.